UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BRIAN JOSEPH GUILLOTTE**     **CIVIL ACTION**

**VERSUS**     **NUMBER: 21-1422**

**DR. PHILLIP KNOWLIN, ET AL.**     **SECTION: "F"(5)**

**PARTIAL REPORT AND RECOMMENDATION**

Before the Court is the Motion to Dismiss filed by CorrectHealth Lafourche, L.L.C. ("CorrectHealth"). (Rec. doc. 22). *Pro se* Plaintiff Brian Guillotte has not filed a memorandum in opposition to the motion in accordance with the local rules of this Court. For the following reasons, **IT IS RECOMMENDED** that the Motion to Dismiss (Rec. doc. 22) be **GRANTED**.

**I.   Background**

Guillotte is a frequent filer of lawsuits in this Court. (*See* E.D. La., Civ. A. Nos. 21-1400, 21-1422, 21-1775, 21-1850, 21-2016). In this lawsuit, through largely illegible Complaints (Rec. docs. 1, 4, 4-1), Guillotte alleges claims under 42 U.S.C. § 1983 for deliberate indifference to his medical needs, medical malpractice, and negligence by CorrectHeath regarding the medical treatment that he received while incarcerated at Lafourche Parish Detention Center.

Guillotte maintains that "Lafourche Parish failed to look at [his] arm even though it shows bruising internal [sic] . . ." and that "CorrectHealth . . . only go[es] via satellite in looking into the problem with no physical or visual insight into the problem." (Rec. doc. 1 at p. 8). He admits, however, that three x-rays were taken of his shoulder, the last of which

1

occurred on June 23, 2021. (*Id.* at pp. 5, 8). According to Guillotte, Defendant Dr. Phillip Knowlin determined that the x-rays did not reveal anything, and Knowlin made a "negligent decision on a diagnosis." (*Id.* at p. 8). Guillotte also maintains that he needs to be taken to a hospital to undergo an MRI, and that he is "sure they will have to do a surgery on [his] arm." (*Id.*). Guillotte further claims that nurses at Defendant Lafourche Parish Medical Department called him a crybaby, that he has lost feeling in his arm, and that he is "physically and mentally beat over this." (*Id.* at p. 6).

On what appears to be March 16, 2021, Guillotte filed a grievance with the Lafourche Parish Sherrif's Office in which he included the following complaint: "I have medical problems. Also, I need to go to Hospital." (*Id.* at p. 11). On May 9, 2021, Plaintiff filed another grievance in which he stated that he underwent a second set of x-rays and nurses told him that he "needed to write the medical dept. for results," and that "Nurse Brittany" informed him that the facility would not give him an MRI. (*Id.* at p. 17).

On July 26, 2021, Guillotte filed a deficient complaint for habeas corpus and a writ of mandamus. (Rec. doc. 1). On September 14, 2021, Guillotte corrected the deficiency, still titling his complaint as a request for writs of habeas corpus and mandamus. (Rec. doc. 4). Liberally construing Guillotte's complaint – as this Court must do, *Mendoza-Tarango v. Flores*, 982 F.3d 395, 399 (5th Cir. 2020) – the Clerk of Court construed Guillotte's complaint as one of "prison condition" under 42 U.S.C. § 1983.

## II. Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re*

*Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The Court must thus identify pleadings that are conclusory and are not entitled to the assumption of truth and legal conclusions must be supported by the factual allegations that are pled. *Id.* at 677–78.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Id.* While a complaint need not contain detailed factual allegations, it does demand more than an unadorned, "the-defendant-unlawfully-harmed-me" accusation. *Id.*; *Bartholomew v. Ladreyt*, Civ. A. No. 14-1468, 2015 WL 365525, at *1 (E.D. La. Jan. 27, 2015).

### III. Law and Analysis

#### A. Section 1983 *Monell* Claims

A private company, such as CorrectHealth, that has been hired to run the medical department at a parish jail is treated as a municipal or local governmental entity for the purposes of 42 U.S.C. § 1983, and, therefore, claims against such a company are analyzed as "*Monell*" claims. In a lawsuit in which a similar corporation, CorrectHealth Jefferson, L.L.C., had been named as a defendant, this Court recently explained:

> "The test to determine liability for a private prison-management corporation under § 1983 is more or less identical to the test employed to determine municipal or local government liability." *Alfred v. Corr. Corp.*, 2009 WL 789649, at *2, n.1 (W.D. La. Mar. 24, 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (other citations omitted)). Thus, to establish CorrectHealth's liability under § 1983, [the plaintiff] must prove the existence of a policymaker, an official policy, and a violation of the plaintiff's constitutional rights for which the moving force was the policy or custom. *See Duvall v. Dall. Cnty., Tex.*, 631 F.3d 203, 209 (5th Cir. 2011); *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). The requirement of a

policymaker, an official policy, and the 'moving force' of the policy, serve to distinguish individual violations by government healthcare contractor employees from those that can be fairly considered actions of the government health contractor itself. *Piotrowski*, 237 F.3d at 578.

*Woodward v. Lopinto*, Civ. A. No. 18-4236, 2021 WL 1969446, at *5 (E.D. La. May 17, 2021); *accord Carter v. Gautreaux*, Civ. A. No. 19-105, 2020 WL 6251186, at *2 (M.D. La. Oct. 22, 2020) (treating a claim against CorrectHealth East Baton Rouge, L.L.C., as a *Monell* claim); *Richardson Plaquemines Parish Detention Ctr.*, Civ. A. No. 19-10926, 2020 WL 5217017, at *5 (E.D. La. Aug. 12, 2020) (treating a claim against CorrectHealth Plaquemines, L.L.C., as a *Monell* claim), *adopted*, Civ. A. No. 19-109262020 WL 5209302 (E.D. La. Sept. 1, 2020).

Regarding *Monell* claims generally, the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, **a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted**. To satisfy the cause in fact requirement*,* **a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom**. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

*Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (emphasis added; citations, quotation marks, and brackets omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cty.*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, Civ. A. No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must **identify** the policy or custom that allegedly caused the deprivation of his constitutional rights. *See*

4

*Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003); *Wetzel*, 2009 WL 5125465, at *3. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original).

In this case, Guillotte does not allege that his constitutional rights were violated as a result of a policy or custom, much less does he identify such a policy or custom. Therefore, he has failed to state a proper *Monell* claim against CorrectHealth. Guillotte does not assert any factual allegations related to a written or express CorrectHealth policy, nor does he show a widespread pattern or practice of CorrectHealth employees. The Complaint fails to mention a single fact outside of Guillotte's own alleged medical experience.

Without one factual allegation to show an alleged constitutional violation was committed pursuant to a CorrectHealth policy or custom, the Complaint attempts to hold CorrectHealth liable on a *respondeat superior* theory. This is prohibited under § 1983. *Id.* Accordingly, the instant motion should be granted with respect to the § 1983 claims against CorrectHealth, and those claims should be dismissed with prejudice.

B. **Section 1983 Deliberate Indifference Claims**

Guillotte's Complaint may also be liberally construed as asserting a claim under Section 1983 for deliberate indifference to his medical needs by CorrectHealth. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or by prison guards in

5

intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (citation and footnotes omitted); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).

The Supreme Court has adopted "subjective recklessness as used in the criminal law" as the appropriate definition of "'deliberate indifference' under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

> [A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *See id.* at 843 & n. 8; *Reeves*, 27 F.3d at 176.

Guillotte has made no such allegation here. Guillotte admits that he has undergone three x-rays. (Rec. doc. 1 at pp. 5, 8). The Fifth Circuit has held that a plaintiff's "admission in his complaint that the prison medical staff took x-rays of his back . . . refute his assertion of deliberate indifference to his medical needs[.]" *Bejaran v. Cruz*, 79 F. App'x 73, 74 (5th Cir. 2003) (citing *Estelle*, 429 U.S. at 106). Moreover, while Plaintiff argues that Knowlin's determination that the x-rays did not show anything was a "negligent decision on a diagnosis," (Rec. doc. 1 at p. 8), neither the negligent treatment nor Plaintiff's disagreement with the medical treatment provided to him rise to the level of a constitutional violation. *See Patterson v. Orleans Par. Dist. Atty. Office*, Civ. A. No. 06-7322, 2007 WL 5063238, at *18 (E.D. La. Apr. 16, 2007) ("Contentions like [Plaintiff]'s that amount to a mere disagreement

6

with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim"); *see also Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) ("There is no Eighth Amendment claim just because an inmate believes that 'medical personnel should have attempted different diagnostic measures or alternative methods of treatment.'"); *Corte v. Schaffer*, 24 F.3d 237 (5th Cir. 1994) (concluding, contrary to the plaintiff's allegation that he had received "no treatment" and that he needed a referral to a specialist, he had failed to demonstrate deliberate indifference when he had been seen by prison medical personnel and when his test results were within a normal range). Guillotte's claims against CorrectHealth for any deliberate indifference should also be dismissed with prejudice.

### C. Medical Malpractice Claim

In the Complaint, Plaintiff asserts a claim for medical malpractice. (Rec. doc. 1 at p. 10). Under the Louisiana Medical Malpractice Act, however, a medical malpractice claim must be presented to a medical review panel before filing suit. *See Castellanos v. Jefferson Par. Correctional Ctr.*, Civ. A. No. 07-7796, at *5-6 (E.D. La. 2008) (holding that the plaintiff had failed to exhaust his statutory remedies before filing medical malpractice claims). Guillotte has failed to submit the claim for an opinion by a medical review panel. As such, this claim should be dismissed without prejudice as premature. *See Walker v. Llovet*, Civ. A. No. 08-3834, 2008 WL 4949038, at *3, n. 7 (E.D. La. 2008).

### IV. Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that the Motion to Dismiss (Rec. Doc. 22) be **GRANTED**.

7

**IT IS FURTHER RECOMMENDED** that the federal law claims against CorrectHealth Lafourche, L.L.C. be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the state law claim for medical malpractice against CorrectHealth Lafourche, L.L.C. be **DISMISSED WITHOUT PREJUDICE** as premature based on plaintiff's failure to exhaust his state statutory remedies.

**NOTICE OF RIGHT TO OBJECT**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).[1]

New Orleans, Louisiana, this 7th day of December, 2021.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.

8